**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-21481-KMM

PAUL TURNER,

        Plaintiff,

v.

COSTA CROCIERE S.P.A., and
COSTA CRUISE LINES INC.,

        Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE came before the Court upon Defendants Costa Crociere S.P.A. ("Costa Crociere") and Costa Cruise Lines Inc.'s ("CCL") (collectively, "Defendants") Motion to Dismiss. ("Mot.") (ECF No. 19).   Plaintiff filed a response in opposition.   ("Resp.") (ECF No. 46). Defendants filed a reply.  ("Reply") (ECF No. 56).  The Motion is now ripe for review.

## I.    BACKGROUND

Plaintiff's claims arise from a COVID-19 outbreak on the Costa *Luminosa,* a cruise ship in which Plaintiff was a passenger.  *See generally* ("Compl.") (ECF No. 1).  Defendants are the operators of the Costa *Luminosa.  Id.* ¶ 9.  Costa Crociere is headquartered in Genoa, Italy.  *Id.* ¶ 2.  CCL, a subsidiary of Costa Crociere, is headquartered in Pembroke Pines, Florida.  *Id.* ¶ 3.

In the Complaint, Plaintiff alleges that Defendants' negligence resulted in an outbreak of COVID-19 on the cruise ship.  *See id*.  Additionally, Plaintiff alleges that Defendants failed to warn passengers of the dangers of COVID-19 prior to the voyage.  *See id.*  In the Complaint, Plaintiff brings claims for (1) negligence, (2) negligent infliction of emotional distress, (3) intentional infliction of emotional distress, (4) misleading advertising, and (5) negligent misrepresentation. *See id*. ¶¶ 57–90.

Passengers' tickets for the Costa *Luminosa* include terms and conditions to which passengers agree by purchasing or using the ticket.  ("Passage Ticket Contract" or "Contract")

(ECF No. 17–10).  Notably, the Passage Ticket Contract includes a forum-selection clause that requires all litigation be brought in Genoa, Italy.  *Id.* § 2(a) ("Any claim, controversy, dispute, suit, or matter of any kind whatsoever arising out of, concerned with, or incident to any Cruise or in connection with this Contract shall be instituted only in the courts of Genoa, Italy, to the exclusion of the courts of any other country, state, or nation.").  Additionally, the Passage Ticket Contract provides that Italian law will apply to any dispute between passengers and the cruise line.  *Id.*

Now, Defendants move to dismiss the Complaint based on the doctrine of *forum non conveniens*.  *See generally* Mot.

## II.    LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).  Ordinarily, to obtain dismissal based on the doctrine of *forum non conveniens*, a movant must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause."  *Atl. Marine*, 571 U.S. at 63.  Notably, the existence of a valid forum-selection clause governing the claims at issue shifts the burden from the party seeking dismissal to the non-movant to establish that dismissal is improper.  *See id.*  Moreover, courts must give no deference to the plaintiff's choice of forum and may only consider the public interest factors.  *See id.*  Accordingly, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum."  *Id.*

When ruling on a motion to dismiss for *forum non conveniens*, a court may "consider matters outside the pleadings if presented in proper form by the parties." *MGC Commc'ns, Inc. v. BellSouth Telecomm., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001). Additionally, in considering a motion to dismiss for *forum non conveniens*, a court must accept the facts in the plaintiff's complaint as true, "to the extent they are uncontroverted by the defendants' affidavits." *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (citation omitted). "When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the . . . facts and to construe such facts in the light most favorable to the plaintiff." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (citation omitted).

## III.   DISCUSSION

Defendants argue that the Court should (1) enforce the Parties' forum-selection clause, and (2) dismiss Plaintiff's Complaint based on the doctrine of *forum non conveniens*. *See generally* Mot. In response, Plaintiff argues the Court should not enforce the forum-selection clause because (1) some of Plaintiff's claims fall outside the scope of the forum-selection clause, and (2) the forum-selection clause is invalid and unenforceable. Resp. at 6–11. Additionally, Plaintiff argues that the doctrine of *forum non conveniens* does not require dismissal. *Id.* at 11–18. First, the Court will address whether all of Plaintiff's claims fall within the scope of the forum-selection clause. Second, the Court will determine whether the forum-selection clause is valid and enforceable. Third, the Court will consider whether the doctrine of *forum non conveniens* dictates that the Court dismiss Plaintiff's Complaint.

### 1.   <u>Scope of Forum-selection Clause</u>

First, Defendants argue that the forum-selection clause is broadly written to include all of Plaintiff's claims. Mot. at 10. In response, Plaintiff argues that some of his claims fall outside the

3

scope of the forum-selection clause because the Passage Ticket Contract is only valid for the specified sailing dates. Resp. at 7. Specifically, Plaintiff cites to § 10(a), which provides that the Contract "is valid only for the Vessel, the accommodations, and the sailing dates specified" in the Contract. Passage Ticket Contract § 10(a). Additionally, Plaintiff refers to the definitions section, which defines "Guest" as "any person traveling hereunder." *Id.* Therefore, Plaintiff argues, his claim based on Defendants' failure to warn the passengers about the dangers of COVID-19 is outside the scope of the forum-selection clause because the underlying events occurred prior to the specified sailing dates. Resp. at 7. In reply, Defendants argue that Plaintiff misconstrues the limitation of a passengers' *use* of the Contract as a ticket for the specified dates as a limitation on the validity of the Contract. Reply at 11.

"In any case involving a forum-selection clause, the court must determine the scope of the clause and whether it covers the particular claims asserted." *Landau v. Jaffa*, No. 18-60772-CIV, 2018 WL 4778426, at *4–5 (S.D. Fla. July 19, 2018) (citation omitted). To determine whether the claim or relationship at issue falls within the scope of a forum-selection clause, courts must look to the language of the clause itself. *See Bahamas Sales Assoc. v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012). Additionally, general contract principles apply to courts determination of the scope of forum-selection clauses. *See Slater v. Energy Servs. Grp. Int'l, Inc.*, 643 F.3d 1326, 1330 (11th Cir. 2011) (citing *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 & n.11 (11th Cir. 2008)). And, "[u]nder general contract principles, the plain meaning of a contract's language governs its interpretation." *Id.*

Here, all of Plaintiff's claims fall within the scope of the forum-selection clause. To interpret the scope of the forum-selection clause, the Court first looks to the forum-selection clause itself. *See Byers*, 701 F.3d 1340 (noting courts first look to the forum-selection clause itself to

determine its scope).  The forum-selection requires that "[a]ny claim . . . of any kind whatsoever arising out of, concerned with, or incident to any Cruise or in connection with this Contract shall be instituted only in the courts of Genoa, Italy[.]"  Passage Ticket Contract § 2(a).

Notably, the Eleventh Circuit interpreted a similar clause, which provided that "any 'case or controversy arising under or in connection with this Agreement[,]'" to include "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987), *aff'd*, 487 U.S. 22 (1988). Thus, the plain meaning of the forum-selection clause denotes that it applies to all claims that arise out of the relationship between the Parties–that of cruise line operator and cruise line passenger. *Id.*

Moreover, Plaintiff's proposed construction is unreasonable because it views certain sections in isolation from the forum-selection clause and the remainder of the Contract.  *See O'Brien v. Miller*, 168 U.S. 287, 297 (1897) (citation omitted) ("The elementary canon of interpretation is, not that particular words may be isolatedly considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations between the parties, and the intention which they have manifested in forming them.").  Notably, Plaintiff disregards a section of the Contract that necessarily only applies prior to the ship's voyage–the cancellation policy.  *See* Passage Ticket Contract § 11.  Specifically, the Contract provides what percentage of the fare will be refunded to the passenger depending on how many days *before* departure the passenger cancels their reservation.  *Id.*  Therefore, it is plainly apparent that the Parties intended the Contract to be valid and controlling prior to the specified sailing dates.

Additionally, Plaintiff's proposed interpretation is contrary to the plain meaning of the forum-selection clause.  *See In re FFS Data, Inc.*, 776 F.3d 1299, 1305 (11th Cir. 2015) (citation

omitted) ("[A] [contract] should be read to give effect to all its provisions and to render them consistent with each other."). As noted above, the forum-selection clause is broadly written to apply to all claims arising out of, or concerned with, the Parties' relationship. Passage Ticket Contract § 2(a). To import the limitation that the forum-selection clause only applies to claims that arise during the sailing dates would require the Court to rewrite the clause to provide an interpretation that is contrary to its plain meaning. *See Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1143 (11th Cir. 2019) (citation omitted) ("[W]e may not rewrite [the parties'] contract[], add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.") (citation omitted).

Next, the Court must assess "the relationship of the claim in question to the contract containing the forum-selection clause[.]" *Asenov v. Sliversea Cruises, Ltd.*, No. 11-62360-CIV, 2012 WL 1136980, at *4 (S.D. Fla. Mar. 28, 2012). The Court finds that Plaintiff's failure to warn claims are at least indirectly, if not directly, related to the underlying relationship–that of passenger and cruise ship operator. *See Ricoh Corp.*, 810 F.2d at 1070. That is, Plaintiff's claim is premised on Defendants' failure to fulfill a duty that they owed to cruise ship passengers as cruise ship operators. *See Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001*)* (holding that a claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties."). Thus, all of Plaintiff's claims fall within the scope of the forum-selection clause.

### 2. **Validity and Enforceability of Forum-selection Clause**

Next, Plaintiff argues that the forum-selection clause is not valid or enforceable. Resp. at 8–11. Specifically, Plaintiff argues that enforcing the forum-selection clause would (1) contravene

public policy; and (2) be fundamentally unfair.  *Id.*  In response, Defendants argue the forum-selection clause is valid and enforceable.  Reply at 3–6.

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances."  *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 883 (11th Cir. 2018) (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)); *see also Atl. Marine*, 571 U.S. at 63–64 (noting that the party seeking to avoid the forum-selection clause bears the burden of showing exceptional circumstances, predicated on public-interest considerations, to justify disturbing the clause).  Enforcement is unfair or unreasonable when "(1) formation [of the forum-selection clause] was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy."  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998).

Moreover, the Supreme Court has noted that "reasonable" forum-selection clauses provide significant advantages, such as providing clarity to the parties, avoiding litigation in multiple fora and determining beforehand where disputes can be brought.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991).  Indeed, these clauses reduce the time and expense of litigation and promote ease of judicial administration, which in turn lower overall consumer costs. *Id.*  Further, "the policy considerations for affording forum-selection clauses a presumption of validity in the context of freely negotiated agreements apply equally to form contracts drafted by cruise ships and resorts."  *Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1257 (S.D.

Fla. 2001) (citation omitted).  The only difference is that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness."  *Shute*, 499 U.S. at 595.

     i.     *Enforcing the Forum-Selection Clause Does Not Contravene Public Policy*

       Plaintiff argues that enforcing the forum-selection clause would contravene strong public policy.  Resp. at 10–11.  Specifically, Plaintiff argues (1) the forum-selection clause is unenforceable pursuant to 46 U.S.C. § 30509; and (2) the forum-selection clause is voidable by the members of the putative class who are minors.  *Id.*  In response, Defendants argue (1) courts have repeatedly held that § 30509 does not invalidate forum-selection clauses, and (2) the forum-selection clause is enforceable against minors.  Reply at 5–6.

       First, Plaintiff argues that the forum-selection clause is not enforceable because § 30509 expressly voids forum-selection clauses.  Resp. at 10.  Section 30509 provides that a maritime contract may not include a limitation of liability or restrict a personal injury claimant's right to a trial by court of competent jurisdiction.  § 30509.  Plaintiff argues that the forum-selection clause is prohibited by § 30509 because it bars this Court, a court of competent jurisdiction, from hearing Plaintiff's case.  Resp. at 10.  However, in *Shute*, the Supreme Court expressly rejected this argument and found that § 30509[1] does not prohibit forum-selection clauses in maritime contracts because these clauses permit judicial resolutions of claims and do not purport to limit liability for negligence.  *See Shute*, 499 U.S. at 596–97.

---

[1]  Prior to a renumbering of Title 46 in 2006, this section was located at 46 App. U.S.C. § 183c.  In *Shute*, the Supreme Court considered the statute by its prior section number, § 183c.  For ease of reading the Court refers to the statute by its current section number, § 30509.

Moreover, in *Myhra*, the Eleventh Circuit held that § 30509 does not prohibit forum-selection clauses that require litigation be brought in a foreign jurisdiction. *See* 695 F.3d 1233. Notably, the Eleventh Circuit emphasized that Congress enacted § 30509 to address the concern that ship owners were unilaterally imposing limitations of liability in maritime contracts, rendering personal injury claimants "without *any* recourse to judicial process." *Id.* at 1242. Further, the Eleventh Circuit underscored that "a choice-of-forum clause merely directs the litigation to a particular forum[,]" rather than depriving a claimant of his day in court. *Id.* Thus, Plaintiff's argument that § 30509 voids the forum-selection clause is meritless.

Second, Plaintiff argues that the forum-selection clause is not enforceable as to the putative class members who are minors. Resp. at 10–11. Specifically, Plaintiff argues that contracts are voidable at the election of minors and "the minors expressly choose to void the entire contract at issue and all of its provisions." *Id.* However, named plaintiffs do not have standing to advance arguments on behalf of unnamed putative class members.[2] *See In re Checking Account Overdraft Litigation*, 780 F.3d 1031, 1038 (11th Cir. 2015) (citation omitted). Therefore, it is only proper for the Court to consider whether the forum-selection clause is valid and enforceable as to Plaintiff, who is not a minor. Thus, this argument is inapplicable to the Court's determination.

ii.    *Enforcing the Forum-Selection Clause is Not Fundamentally Unfair or Inconvenient*

Next, Plaintiff argues that enforcement of the forum-selection clause would be

---

[2]   Although courts may grant third-party standing to named plaintiffs to assert the rights of unnamed putative class members, it is not proper to do so here. *See In re Checking Account Overdraft Litigation*, 780 F.3d at 1038–39. It is proper to grant third-party standing if the named plaintiff and the unnamed putative class members have a sufficiently close relationship and the unnamed putative class members are somehow hindered in their ability to protect their own interest. *Id.* It would be improper for the Court to grant Plaintiff third-party standing because there is no hinderance preventing passengers who are minors from filing their own claims against Defendants and asserting this right. *See In re Checking Account Overdraft Litigation*, 780 F.3d at 1038–39.

fundamentally unfair and inconvenient.  Resp. at 8–10.  Specifically, Plaintiff argues that (1) Italy is a remote jurisdiction that does not have connections to the litigation, and (2) the COVID-19 pandemic makes litigating in Italy fundamentally unfair and inconvenient.  *Id.*  In response, Defendants argue (1) it was foreseeable that Plaintiff would be required to litigate in Italy, (2) Plaintiff is incorrect that Italy has no connections to the litigation, and (3) the COVID-19 pandemic does not make it unfair or more inconvenient to litigate in Italy than in the Southern District of Florida.  Reply at 3–5.

To invalidate a forum-selection clause based on a foreseeable inconvenience or burden, a plaintiff must show that litigating "in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be *deprived of his day in court.*"  *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17–18 (1972) (emphasis added).  The Supreme Court also noted that, under certain circumstances, "[t]he remoteness of the forum might suggest that the agreement was an adhesive one, or that the parties did not have the particular controversy in mind when they made their agreement; yet even there the party claiming should bear a heavy burden of proof."  *Id*. at 17.  The Supreme Court opined that "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause" where a court  is "dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum."  *Id.*

Here, the Court finds that it is not fundamentally unfair or inconvenient to enforce the forum-selection clause.  First, Plaintiff argues that it would be unfair to enforce the forum-selection clause because Italy is a remote alien jurisdiction with no connection to his claim.  Resp. at 6, 8–10.  Specifically, Plaintiff argues that Italy has no connection to his claims because the ship did not visit an Italian port and CCL is an American company.  *Id.*  Plaintiff's argument seems to imply

that the Parties did not intend there to be a connection to Italy.  However, Plaintiff's argument is misleading because he ignores that the Costa *Luminosa* was scheduled to visit three Italian ports, but was unable to do so because of the COVID-19 pandemic.  (ECF No. 17–3).  Thus, the fact that the ship did not ultimately visit Italy does not render Italy a remote jurisdiction.

Further, Plaintiff places undue emphasis on CCL's status as an American company while completely disregarding Costa Crociere's status as an Italian company.  Plaintiff argues that it would be unfair (1) to permit CCL, an American company, to force American plaintiffs to litigate in Italy, and (2) to enforce the forum-selection clause while allowing Costa Crociere "to reap gigantic benefits from its operations in" Florida.  Resp. at 9.  Critically, Plaintiff does not even address the fact that Costa Crociere is headquartered in Italy.  *See generally id*.  Nor does Plaintiff provide a legal basis for his argument that CCL's American citizenship mandates invalidating the forum-selection clause, notwithstanding Costa Crociere's Italian citizenship.  *See generally id*.

Moreover, Plaintiff's focus on CCL's citizenship ignores Supreme Court precedent that highlights foreign companies' strong interest in forum-selection clauses.  Notably, in *Shute*, the Supreme Court emphasized that cruise line operators have a special interest "in limiting the fora in which it potentially could be subject to suit" to ensure that it is not "subject . . . to litigation in several different fora."  *Shute*, 499 U.S. at 593.  Additionally, in *Bremen,* the Supreme Court emphasized the weight and effect courts must give to forum-selection clauses in light of the increasingly globalized nature of commercial activity.  *See Bremen*, 407 U.S. at 8–9 ("We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.").  Further, the Supreme Court has noted that these clauses don't just provide benefits to businesses, but also reduce overall costs for the consumer.  *See Shute*, 499 U.S. at 593.

11

Notably, a review of the passengers' nationalities highlights Defendants' interest in selecting Italy as a forum in which they may be sued.  (ECF No. 37–1).  First, a substantial number of passengers were from North America, Europe, Africa, Australia and South America.  *Id.* at 80.  Therefore, Defendants have a significant interest in limiting the fora in which they may be subject to lawsuits to avoid being sued in multiple jurisdictions all over the world.  *See Shute*, 499 U.S. at 593.  Further, a majority of the passengers were European nationals.  *Id.* at 80.  Specifically, on the February 24, 2020 voyage, out of the 2,129 passengers, 1,792 were European nationals and only 54 were American.  *Id*.  Similarly, on the March 5, 2020 voyage, out of the 1,421 passengers, 934 were European nationals and only 233 were American.  *Id.*  Thus, although it may be inconvenient for Plaintiff to be required to litigate in Italy, Defendants' selected forum is more convenient for most passengers.  In light of this fact and Defendants' interest in limiting the fora in which they may be subject to lawsuits, it is not fundamentally unfair for Defendants to contract with passengers to bring claims in Italy.

Second, Plaintiff argues that requiring Plaintiff to litigate in Italy while recovering from complications of COVID–19 is fundamentally unfair.  Resp. at 9–10.  Although the COVID-19 pandemic may not have been foreseeable at the time of contracting, it was foreseeable that Plaintiff may be required to litigate in Italy while suffering from lingering complications from a physical injury.  *See Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 201–02 (11th Cir. 2019) (noting that the plaintiff's complications from the physical injury that she suffered while a passenger on the defendant's cruise was "exactly the particular controversy [the parties had] in mind when they selected Italy as a forum.").  The fact that Plaintiff's injuries result from an unexpected and novel coronavirus, rather than a more traditional accident, does not change the fact that the Parties anticipated *all* personal injury claims to be brought in Italy.

12

Third, the existence of the COVID-19 pandemic and resulting restrictions on travel does not warrant invalidating the forum-selection clause.  Plaintiff argues that he is unable to travel to Italy due to legal restrictions and it would be unfair to require him to travel to Italy because of the COVID-19 pandemic.  Resp. at 9–10.  As an initial matter, Plaintiff argues that the Italian government has banned Americans from traveling to Italy.  *Id.* at 9.  However, Plaintiff cites to an outdated Italian decree.  *Id.*  Indeed, on August 7, 2020, the Italian government lifted certain travel restrictions for American visitors.  (ECF No. 56–1) ¶ 7.  Although Americans are still banned from traveling to Italy for tourism, they are permitted to travel to Italy for specific reasons, such as court proceedings.  *Id.*  Thus, there is no legal barrier preventing Plaintiff from traveling to Italy to pursue his claims.

Moreover, Plaintiff fails to establish that it will be necessary to travel to Italy to prosecute his case.  Notably, technological advancements have mitigated the necessity for in person proceedings.  *See Petersen Energia Ingersora S.A.U. v. Argentine Republic*, Nos. 15 Civ. 2739 (LAP), 16 Civ 8569 (LAP), 2020 WL 3034824, at *11 (S.D.N.Y. June 5, 2020) (Preska, J.) ("Indeed, sure to be one of the enduring lessons of the ongoing COVID-19 pandemic is that we can accomplish far more remotely than we had assumed previously.").  Indeed, courts have emphasized that "a plaintiff may have his day in court without ever having set foot in the courtroom."  *See, e.g., Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995) (citations omitted).  Thus, even if travel to Italy is burdened, technological advancements permit Plaintiff to have his day in court remotely.

And, Plaintiff does not establish that the Italian legal system would require him to travel to Italy rather than prosecuting his case remotely.  *See Petersen Energia Ingersora S.A.U.*, 2020 WL 3034824, at *11, 14 (noting that if there are no rules that require hard copies and in-person

testimony, then modern technology permits litigation to be conducted remotely).  In support of their Motion, Defendants provide an affidavit from an experienced Italian litigator, Cecilia Vernetti ("Vernetti"), to inform the Court that Plaintiff's presence is not necessarily required by the Italian Rules of Civil Procedure.  *See* ("Vernetti Aff.") (ECF No. 18–1).  Specifically, Vernetti explains that the Italian Rules of Civil Procedure only require a plaintiff's presence at hearings for resolution of disputes before the Judge or if the defendants request a hearing to conduct a formal examination of the plaintiff.  *Id.* ¶ 9.  However, Vernetti notes that arrangements can be made to appoint a special attorney to attend hearings on Plaintiff's behalf or that he could request the judicial act to be performed in the United States by way of international rogatory pursuant to the Hague Convention.  *Id.*

In response, Plaintiff does not dispute Vernetti's findings that Plaintiff may not be required to travel to Italy.  Resp. at 9–10.  Although the Court does not discount Plaintiff's concern about traveling during the COVID-19 pandemic, the Court emphasizes that the burden is on Plaintiff to make a strong showing that it would be fundamentally unfair to enforce the forum-selection clause. *See M/S Bremen*, 407 U.S. at 17; *Aviation One of Fla., Inc.*, 722 F. App'x at 883 (citation omitted). And, the Court is not persuaded that the COVID-19 pandemic renders enforcement of the forum-selection clause fundamentally unfair in light of technological advancements and the accommodations that may mitigate Plaintiff's need to travel to Italy to prosecute his claim.[3]

---

[3]  Additionally, Plaintiff mentions in passing that the third circumstance may render enforcement of the forum-selection clause unreasonable–that the chosen law would deprive the plaintiff of a remedy.  Resp. at 8 ("The second, third and fourth of these factors support invalidation.").  However, Plaintiff does not explain how Italian law would deprive Plaintiff of a remedy.  *See generally id.*  Thus, the Court does not address this claim.

### 3. *__Forum Non Conveniens__*

Next, Plaintiff argues that the Court should not dismiss Plaintiff's Complaint because the *forum non conveniens* analysis favors this Court over Italy.[4]   Resp. at 11–18.   In response, Defendants argue that the modified *forum non conveniens* analysis requires dismissal of Plaintiff's Complaint.   Reply at 11–13.

Where there is a valid and enforceable forum-selection clause courts apply a modified *forum non conveniens* analysis and assess (1) whether an adequate alternative forum is available, (2) whether the public factors weigh in favor of dismissal, and (3) whether the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Atl. Marine*, 571 U.S. at 63–65.

When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. *See id*. Accordingly, courts must deem the private-interest factors to weigh entirely in favor of the preselected forum. *See id*. Moreover, "the plaintiff's choice of forum merits no weight." *Id*. at 63–64. "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*.

Indeed, the party seeking to avoid the forum-selection clause bears a "heavy burden of proof" in establishing that the clause should be set aside. *See Shute*, 499 U.S. at 595. Notably, the

---

[4]  The Court notes that in his Response, Plaintiff's argument assumes that the Court will find the forum-selection clause invalid. Resp. 11–17. Specifically, Plaintiff does not apply the modified *forum non conveniens* analysis. *Id*. Therefore, Plaintiff's argument is premised on the fact that Defendants have the burden to show that dismissal is warranted. *Id*. However, because the Court finds the forum-selection clause is valid, the burden shifts to Plaintiff to establish that dismissal is improper. Thus, Plaintiff fails to affirmatively argue that dismissal is improper.

Supreme Court has opined that "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a . . . motion [to dismiss based on *forum non conveniens*] be denied." *Atl. Marine*, 571 U.S. at 62. Thus, the existence of a forum-selection clause is essentially case dispositive in the *forum non conveniens* analysis. *See id.*; *see also GDG Acquisitions, LLC*, 749 F.3d at 1028 ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis).

### i.     Italy is an Adequate and Available Forum

First, Plaintiff argues that Italy is not an adequate and available forum because (1) discovery may reveal additional defendants that are not amenable to litigating in Italy, and (2) Plaintiff has identified a potential defendant, Carnival Maritime GmbH, that may not consent to litigating in Italy. Resp. at 12–13. In response, Defendants provide an affidavit from Carnival Maritime GmbH, wherein it consents to jurisdiction in Italy. Reply at 10.

The first part of this modified *forum non conveniens* analysis requires the Court to determine whether an adequate and available alternative forum exists. "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be [dismissed]." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). That is to say, an adequate alternative forum exists when the defendant is "amenable to process" in the foreign forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981). A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. *See id.*

Here, the Court finds that Italy is an adequate and available forum. First, Defendants provide an affidavit from Carnival Maritime GmbH, wherein it indicates that it would consent to

proceeding in Italy. (ECF No. 56–2) ¶ 2. Therefore, Plaintiff's concern that Carnival Maritime GmbH may not consent to litigating in Italy is unfounded.

Second, Plaintiff's argument that he may uncover other defendants that will not consent to proceeding in Italy is mere speculation. Notably, Plaintiff does not provide a basis for his belief that discovery may reveal other entities that were responsible for his injuries. Resp. at 12–13. Thus, Plaintiff's argument is merely baseless speculation that there *may* be additional defendants that *may* object to litigating in Italy. And, baseless speculation is insufficient to constitute an exceptional circumstance countervailing the controlling weight that the Court should give to the forum-selection clause. *See Atl. Marine*, 571 U.S. at 63 ("[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.").

### ii.    *Public Interest Factors*[5]

Plaintiff argues that the public interest factors weigh in favor of denying Defendants' Motion because (1) the administrative congestion of the Southern District of Florida is accorded little to no weight, (2) the United States has a strong federal interest in making sure that American citizens are permitted to choose an American forum for bringing suit, and (3) Italian law will not apply to this proceeding. Resp. at 17–18. In response, Defendants argue that (1) their conduct did

---

[5] Plaintiff argues that the Court need not consider the public interest factors because the private interest factors are not in equipoise. Resp. at 17. Some courts in this district have held that courts need not address the public interest factors unless the private interest factors are in equipoise. *See, e.g.*, *Fresh Results, LLC v. ASF Holland, B.V.*, No. 17-cv-60949-BLOOM/Louis, 2018 WL 1702192 (S.D. Fla. Mar. 15, 2018), *rev'd*, 921 F.3d 1043 (11th Cir. 2019) (noting that the court need not engage in an exhaustive analysis of the public factors because the court found the private interest factors weigh in favor of dismissal). However, the Eleventh Circuit expressly disavowed this standard. *See Fresh Results, LLC*, 921 F.3d at 1049–51 (reversing district court for, *inter alia*, failing to properly consider the public interest factors and holding that courts must consider the public interest factors regardless of the weight of the private interest factors). Therefore, Plaintiff's argument is meritless.

not occur in the United States, and (2) Italian law applies to Plaintiff's claims.  Reply at 10–11.

The public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (citation omitted).  Although the public interest factors rarely defeat a *forum non conveniens* motion, courts must consider the relevant public interest factors.  *See Fresh Results, LLC*, 921 F.3d at 1050–51 (holding that although the private factors are generally considered more important than the private factors, it is an error for a court not to consider the private factors).

First, the Southern District of Florida has one of the busiest dockets in the United States.  *See McCoy v. Sandals Resorts Int'l, Ltd.*, No. 19-cv-22462-BLOOM/Louis, 2019 WL 6130444, at *14 (S.D. Fla. Nov. 19, 2019).  Nonetheless, the administrative difficulties flowing from court congestion generally are accorded little or no weight in the *forum non conveniens* analysis. *See Morse v. Sun Int'l Hotels Ltd*., No. 98-7451-Civ, 2001 WL 34874967, at *6 (S.D. Fla. Feb. 26, 2001).  Therefore, this factor weighs only slightly in favor of dismissal.

Second, the Court must consider the competing sovereign and local interests.  Plaintiff argues that the United States has an interest in this dispute because CCL is an American company.  Resp. at 17.  However, courts have held that a forum does not have an interest in deciding the dispute merely because one of the defendants is a citizen of that forum.  *See, e.g.*, *McCoy,* 2019 WL 6130444, at *14; *Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1380 (S.D. Fla. 2011).

18

Thus, the fact that CCL is an American company does not establish that the United States has a strong interest in this dispute.

Nevertheless, the Court notes that the United States has "a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *Esfeld v. Costa Crociere, S.P.A.,* 289 F.3d 1300, 1311 (11th Cir. 2002). Even so, "'dismissal should not be *automatically barred* when a domestic plaintiff has filed suit in his home forum.'" *Piper Aircraft Co.*, 454 U.S. at 255 n.22.

Indeed, other considerations counter the United States' interest in this dispute. Notably, Costa Crociere is the largest tour operator in Italy. *See* Costa Cruises, *Our Company: A World in Movement*, https://www.costacruises.com/informations/company.html (last visited Sep. 7, 2020). And, the Italian economy depends on tourism. *See* Statistica, *Total Contribution of Travel and Tourism to GDP in Italy from 2014 to 2029,* https://www.statista.com/statistics/627988/tourism-total-contribution-to-gdp-italy/ (last visited Sep. 7, 2020). Thus, Italy has a strong interest in adjudicating claims that may affect its tourism industry. *See Gordon v. Sandals Resorts Int'l, Ltd.,* 418 F. Supp. 3d 1132, 1143 (S.D. Fla. 2019) ("That forum is highly dependent on tourism and thus, has a strong interest in adjudicating claims that arose from the tourism activities of the Plaintiffs and their decedents.").

Further, the underlying events of the instant action did not primarily occur in Florida such that Florida has a local interest in deciding a localized controversy. Some relevant conduct may have occurred in Florida–for example, Defendants failure to warn passengers of the dangers of COVID-19 before the voyage. However, the primary conduct occurred during a trans-Atlantic cruise–that is, Defendants' failure to take sufficient precautions to prevent an outbreak of COVID-

19.   Thus, this case does not present a localized controversy such that its appropriately decided by a local jury.  Therefore, on balance, the Court finds that neither Italy nor the United States has a substantial interest in deciding this dispute.  Accordingly, this factor is neutral.

Third, it is likely that Italian law will apply to this matter.  The Passenger Ticket Contract provides that Italian law will govern any dispute.  Passage Ticket Contract § 10(a).  Plaintiff argues that Italian law will not apply because (1) § 30509 invalidates the choice of law provision in the Passage Ticket Contract, and (2) maritime law, as supplemented by Florida state law, applies in the matter.  Resp. at 18.

The Eleventh Circuit has held that § 30509 does not prohibit choice-of-law clauses because courts ultimately decide what substantive law applies–either by choosing to enforce the choice-of-law clause or applying the pertinent choice-of-law rules.  *See Myhra*, 695 F.3d at 1242–44.  Thus, the Eleventh Circuit held that a choice-of-law clause is not a unilateral decision by the ship owner as to what law applies.  *See id.*  Therefore, Plaintiff's argument that the choice-of-law clause is void as a matter of law is meritless.

Similarly, Plaintiff's argument that maritime law and Florida state law will apply is unpersuasive.  Plaintiff argues that maritime law and Florida law will apply because Defendants' tortious conduct occurred in Florida and in the Atlantic Ocean.  Resp. at 18.  However, Plaintiff does not provide any analysis nor cite to any authority for the Court to determine the legal basis for Plaintiff's conclusion.  *Id.*  Therefore, Plaintiff has not met his burden that Florida and maritime law rather than Italian law will apply.  Thus, this factor weighs in favor of dismissal.  *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1334 (11th Cir. 2011) (noting that it is well-established that, although not dispositive, "[t]he need to apply foreign law . . .  favors dismissal").

### iii.   *Plaintiff Can Reinstate His Suit Without Undue Prejudice or Inconvenience*

Finally, the Court must ensure that Plaintiff can reinstate his lawsuit in Italy without undue inconvenience or prejudice.  "The burden to satisfy this requirement is not onerous." *Jiangsu Hongyuan Pharm.* Co., Ltd. v. DI Global Logistics Inc., 159 F. Supp. 3d 1316, 1332 (S.D. Fla. 2016) (citation omitted).  "Conditions ensuring a suit can be reinstated in a different forum without undue inconvenience or prejudice 'should include [the] [d]efendant's waiver of any defenses related to the statutes of limitation, venue,[] or jurisdiction' in the alternative forum." *Grape Stars Int'l, Inc., v. nVentive, Inc*., No. 20-20634-CIV-ALTONAGA/Goodman, 2020 WL 4586123, at *15 (S.D. Fla. Aug. 10, 2020) (citation omitted).

Here, the Court finds that Plaintiff can reinstate his lawsuit in Italy without undue prejudice or inconvenience.  In his response, Plaintiff rehashes his argument that discovery may reveal additional defendants that may not consent to proceeding in Italy.  Resp. at 12.  As noted above, the Court does not find this speculative argument persuasive.  Additionally, Defendants and Carnival Maritime GmbH consent to proceeding in Italy.  (ECF No. 16–1) ¶ 29; (ECF No. 17–1) ¶ 44; (ECF No. 56–2) ¶ 2.  Further, the Defendants have agreed to waive the defense of statute of limitations defense as long as Plaintiff re-files the lawsuit within the next six months.  (ECF No. 16–1) ¶ 29; (ECF No. 17–1) ¶ 44.

Nevertheless, the Court notes that Defendants provide an affidavit from Bruno Cavallone ("Cavallone"), an Italian lawyer and law professor, who informs the Court that Plaintiff's claims are not subject to a statute of limitations defense.  ("Cavallone Aff.") (ECF No. 15–1) ¶ 31. Specifically, Plaintiff's claims are not time-barred because the Italian statute of limitations is ten years for contract claims and five years for tort claims.  *Id*.  Further, Cavallone explains that a plaintiff may prevent the statute of limitations from beginning to run, effectively forever, by

21

continuously providing a notice of claim to the defendant. *Id.* Thus, the Court finds that Plaintiff can reinstate his lawsuit in Italy without undue inconvenience or prejudice.

> *iv.*   *The Modified Forum Non Conveniens Factors Weigh in Favor of Dismissal*

In conclusion, the *forum non conveniens* factors weigh strongly in favor of dismissal.  First, Italy is an adequate and available forum such that it would be proper for the Court to dismiss the Complaint based on *forum non conveniens*.   Second, because there is a valid and enforceable forum-selection clause, the Court must deem the private interest factors weigh in favor of dismissal.  *See Atl. Marine*, 571 U.S. at 63–65.  Third, on balance, the public interest factors weigh in favor of dismissal.  Fourth, Plaintiff can reinstate his suit in Italy without undue prejudice or inconvenience.  Therefore, the balance of the factors strongly weighs in favor of dismissal.

## IV.   CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is ORDERED AND ADJUGED that Defendants' Motion to Dismiss (ECF No. 19) is GRANTED.  Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.  The Clerk of Court is instructed to CLOSE this case.  All pending motions are DENIED AS MOOT.[6]

DONE AND ORDERED in Chambers at Miami, Florida, this 9th  day of September, 2020.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:      All counsel of record

---

[6]  Additionally, Plaintiff requested a hearing on Defendants' Motion because the Motion raises complex questions of law and fact.  Resp. at 18; (ECF No. 48).  However, the Court finds that Defendants' Motion raised straightforward issues of law and fact and the Parties' briefs provided sufficient information for the Court to determine Defendants' Motion without the assistance of oral argument.  Therefore, a hearing on the Motion is unnecessary.